CARMICHAEL *v.* ATLANTA GAS-LIGHT COMPANY *et al.*

No. 11811. NOVEMBER 13, 1937.

*George B. Rush,* for plaintiff.

*Alston, Alston, Foster & Moise, M. J. Yeomans, attorney-general,* and *W. H. Duckworth,* for defendant.

GRICE, Justice. Carmichael brought suit against Atlanta Gas-Light Company and Georgia Public-Service Commission. He prayed that the company be enjoined from discontinuing its service at his home, No. 899 Barnett Place N. E., in the City of Atlanta; that the company and the commission be enjoined from enforcing

certain rules hereinafter set out; and that said rules be declared illegal and discriminatory as against him. He owns two houses, Nos. 891 and 899, which are adjacent to each other. The house known as No. 899 consists of four separate apartments, in one of which the plaintiff resides, and No. 891 of two separate apartments which are occupied by tenants. He had a contract with the company for "space and water heating" at 899 Barnett Place. This contract provides for the rate known as No. 1-a in the company's rate schedule. The last paragraph of the contract is as follows: "The customer further agrees to accept and be bound by all rules and regulations in connection with the service hereby covered, which are now or may hereafter be filed with, issued, or promulgated by the Georgia Public-Service Commission and/or other governmental bodies having jurisdiction thereof." The gas used in houses Nos. 891 and 899 is supplied through one meter, which is located in the premises of No. 899. The company rendered him bills on the domestic or schedule 0 rate, which is higher than the schedule 1-a rate. One of the rules and regulations promulgated by the company is as follows: "The contract under which service is rendered by the company to the customer is exclusive and individual, and the customer may not therefore permit service to be taken through his installation into any other 'house,' whether owned by himself or another, whether on his premises or elsewhere. . . The word 'house' as used herein means the home, apartment, private or arranged for light housekeeping, one side of a duplex dwelling, shop, factory, church, or other building or structure which shelters the customer for his own individual or collective occupancy, where all service may be taken from a single-service connection."

This rule was approved by the commission. The company takes the position that under the above-stated rule the plaintiff is not entitled to serve the premises at 891 Barnett Place over the same meter used for heating No. 899 Barnett Place, but that a separate meter must be installed for each house. If forced to serve each house under a separate meter, the yearly cost of consumption of gas for space heating and water heating based on the domestic or schedule 0 rate would be considerably more than if the two houses were served through a single meter. The plaintiff contends that he has the right to have both houses served through the one meter.

He submitted to the commission his contentions and those of the company with respect to the issue involved, and the commission notified him: "Under the rules and regulations of the Atlanta Gas-Light Company, on file with the commission, it is necessary for a separate gas meter to be installed for each housekeeping apartment. The commission voted that the rules and regulations of the gas company, as they now stand on this subject, should not be revised at the present time." The company threatens to discontinue its service unless the plaintiff arranges to provide separate meters for the two houses. If gas is not furnished, his damages, for reasons alleged, will be irreparable. He contends that the rules and regulations of the company as approved by the commission are "illegal, inequitable, rank discriminations, and are contrary to the laws of this State, in violation of paragraph 2 of section 1 of article 1, and of paragraph 3 of section 1 of article 1 of the constitution of this State, and of the 14th amendment to the constitution of the United States; and that the schedules of rates set up an arbitrary, illegal, and discriminatory classification, and therefore are unconstitutional. The court sustained general demurrers of the defendants, and the plaintiff excepted.

The plaintiff in his brief states that it is his contention that there is only one issue in the case, to wit, whether the rules and regulations of the defendant company as set out above are reasonable and legal, or whether same are unreasonable and discriminatory and therefore illegal. The brief further states that the petition does not call in question the amount of the rates charged for the gas, but only the classification under which the defendant seeks to place the plaintiff. The two adjacent buildings are apartment-houses, and under the rule set out above, as well as the interpretation placed thereon by the commission, the two could not be served from the same meter. This follows from the definition of the word "house" which was given by the rule in question. It is not claimed that there has been any misinterpretation of the meaning of the word as used in the rule, or any mistake in applying the rule to the situation presented; but the insistence is that in defining a "house" it is unreasonable, illegal, inequitable, and discriminatory to declare in effect, as part of that definition, that two separate apartment-houses side by side and owned by the same person, shall not be said to constitute a "single house." It is argued that to

require a person who owns two houses side by side, or two apartments side by side, to have separate meters for each apartment, while all apartments could be serviced through one meter and thus entitle the owner to a more favorable rate, constitutes a discrimination and unfairness which the law will not sanction. As pointed out in the brief filed by counsel for the commission, it is not claimed that it has permitted or is permitting any other customer of the gas-light company to enjoy the privilege which the plaintiff is seeking in the instant case. It is not claimed that other users of gas are enjoying rights or privileges denied to him under similar circumstances. But the insistence is that the discrimination arises from the classification in the rule hereinabove set forth. Classification is permitted, provided it be upon any reasonable basis. 51 C. J. § 61, and cit. A gas company may make rules and regulations, subject only to the requirement that they must be reasonable and applicable to all consumers of the same class. 28 C. J. 26. The classification attacked as unreasonable and arbitrary was adopted primarily to control the rate. The Georgia Public-Service Commission has jurisdiction over gas companies. Code, §§ 93-304, 93-307. Since that body has by statute authority to fix just and reasonable gas rates to be paid by the consumers, it follows that it has the power to make classifications which are reasonable, and to fix a different rate for each class of consumers; and where such rates are attacked in the courts, there is a presumption that they are valid, and the burden is on the attacking party to show that the same are invalid in that they are unjust, unreasonable, or discriminatory. *City of Atlanta* v. *Atlanta Gas-Light Co., 149 Ga.* 405 (100 S. E. 439). The rule against discriminations, originally promulgated to protect shippers and those in competition, has of late years been applied throughout all the public services as an integral part of the public-service law. 2 Weyman on Public-Service Corporations, § 1300.

Long-established usage and the custom of the commercial world always has been to sell a large amount of a given commodity in one parcel in a given time at a less price than a smaller quantity of the same commodity distributed in many and smaller parcels at different times. Concord &c. R. Co. *v.* Forsaith, 59 N. H. 122 (47 Am. R. 181) ; Cook *v.* Chicago &c. R. Co., 81 Iowa, 551 (46 N. W. 1080, 9 L. R. A. 764, 25 Am. St. R. 512) ; Rothschild *v.*

Wabash &c. R. Co., 92 Mo. 91 (4 S. W. 418). In Silkman *v.* Yonkers Water Commissioners, 152 N. Y. 327 (46 N. E. 612, 37 L. R. A. 827), it was said: "The objection made here is that the persons who consumed the large quantities of water were not charged as much per hundred cubic feet as those who consumed a less amount. Under this statute the question of consumption was one of the elements to be considered in determining the rates. Surely it can not be said to be unreasonable to provide less rates where a large amount of water is used than where a small quantity is consumed. That principle is usually present in all contracts or established rents of that character. It will be found in contracts and charges relating to electric lights, gas, private water companies, and the like, and is a business principle of general application. We find in the rates as they were established nothing unreasonable, or that would in any way justify a court in interfering with them." In St. Louis Brewing Asso. *v.* St. Louis, 140 Mo. 419 (37 S. W. 525, 41 S. W. 911), it was held that a water company could not only make lower rates to manufacturers than to other consumers, but also lower rates to large manufacturers than to small. Also it has been held that lower rates for water supply could be made to the manufacturer than to all other takers, notwithstanding the city charter forbade exceptional discriminations in water rates, on the ground that as all manufacturers were included in the class the discrimination was not illegal. It has likewise been ruled that a consumer is not entitled to enjoin enforcement against him by a gas company of a rate which the company is authorized to charge, because it grants a lower rate to persons consuming gas for other purposes in larger amounts, as it does not appear that any injury is inflicted upon the complainant by such rates. See Weyman, supra, p. 1178. We see nothing unreasonable, arbitrary, or discriminatory in a rule permitting the gas company and the customer to contract that the latter is not permitted to receive the gas through the meter in his house into another house, whether owned by him or not. Such a contract is binding. This conclusion is not affected by the fact that had the gas consumed by him gone through one meter instead of two, he would have been entitled to a lower rate; or by the fact that had his six units been so constructed as to constitute in fact but one house, his rate, on account of the larger volume, would be lower.

Moreover, aside from the fact that the company's rule and regulation here attacked as arbitrary, unreasonable, and discriminatory does not appear to us to be so, the plaintiff, who criticizes the rule as unjustly affecting the rate and cost of service to him, asks the court to take into consideration the combined gas service at the particular location designated in his contract and the same service at another building owned by him, not mentioned in his application or contract. Considering all the allegations, we are of the opinion that the court did not err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur.*